20230212
FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
04-19-2024
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

---

### 2024 ND 71

---

Margaret Cichos, individually, and as the
surviving spouse of Bradley Cichos, and as
Personal Representative of the Estate of
Bradley Cichos, deceased, Lyman Halvorson,
individually, Landon and Sierra Halvorson
as parents and natural guardians of A.H.
DOB 2011, a minor child, each individually
and collectively as assignees of Jeraldine
Lima, the Personal Representative of the
Estate of Lyle Lima, individually,                    Plaintiffs and Appellants

    and

Kenzie Halvorson, individually,                                        Plaintiff

    v.

Dakota Eye Institute, P.C., Dakota Eye
Institute, LLP, Briana Bohn, O.D.,
individually                                          Defendants and Appellees

    and

Margaret Cichos, individually, and as the
surviving spouse of Bradley Cichos, deceased,
and Landon Halvorson and Sierra Halvorson,
as natural parents and guardians of Minor A.H.,                     Plaintiffs

    v.

Lyman Halvorson,                                                    Defendant

---

### No. 20230212

---

Appeal from the District Court of Pierce County, Northeast Judicial District,
the Honorable Donovan J. Foughty, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice, in which Chief Justice Jensen and Surrogate Judge Schmalenberger joined. Justice Crothers and Justice Bahr each filed a dissenting opinion.

Jonathon F. Yunker (appeared), Devils Lake, North Dakota, for plaintiff and appellant Margaret Cichos.

Timothy M. O'Keeffe (on brief), Fargo, North Dakota, for plaintiff and appellant Lyman Halvorson.

Scott Wilson (argued), Minneapolis, Minnesota, and Mark V. Larson (appeared) and Shelby Larson (appeared), Minot, North Dakota, for plaintiffs and appellants Landon and Sierra Halvorson.

Jason R. Vendsel (on brief), Minot, North Dakota, for plaintiff and appellant Jeraldine Lima.

Angela E. Lord (argued) and MacKenzie L. Hertz (on brief), Fargo, North Dakota, for defendants and appellees.

**Tufte, Justice.**

[¶1] Plaintiffs appeal from an amended judgment dismissing Dakota Eye Institute, P.C., Dakota Eye Institute, LLP, and Briana Bohn, O.D., individually (Defendants). On appeal, Plaintiffs argue the district court erred in granting summary judgment, because a genuine issue of fact exists as to whether Dr. Bohn's statement was a proximate cause of the collision causing Lima's economic injuries. We affirm.

I

[¶2] In May 2016, Lyle Lima was driving his truck on a highway when he collided with a horse-drawn hay trailer. The collision killed one of the six passengers on the horse-drawn trailer and injured the others. In April 2015, a doctor at Dakota Eye Institute determined Lima to be legally blind, prepared a certificate of blindness, and instructed Lima and his spouse that he was not to drive. In April 2016, about six weeks before the collision, a second Dakota Eye Institute doctor, Briana Bohn, examined Lima. Dr. Bohn measured Lima's vision and noted that she instructed Lima, "Pt ed not to drive at night and only minimally during the day, no highways." Plaintiffs claim Dr. Bohn is liable for medical malpractice because Lima's eyesight was still below the minimum vision standards required to operate a vehicle in North Dakota.

[¶3] The injured parties and their representatives made a claim against Lima. In partial settlement of the claim, Lima assigned his medical malpractice claim against Defendants and any recovery he might receive to the Plaintiffs. The injured parties and Lima filed this suit individually and as assignees of Lima against Defendants and Lyman Halvorson. The district court granted Defendant's motion to dismiss. In *Cichos v. Dakota Eye Institute*, P.C., 2019 ND 234, 933 N.W.2d 452, we reversed and remanded.

[¶4] On remand, the parties conducted discovery, and the Defendants moved for summary judgment, arguing that the Plaintiffs failed to establish a prima

facie case showing a breach of a duty and that Dr. Bohn did not proximately cause Lima's economic injuries.

[¶5] The district court determined the Plaintiffs presented only conclusory allegations and denials rather than competent, admissible evidence in response to the Defendants' allegations of the following facts:

> 1) Lyle Lima's damages occurred while he was driving on a highway during daylight hours.
> 2) Lyle Lima was told not to drive upon a highway. Evidence of this includes medical records and Dr. Bohn's deposition statements. This is unrefuted as there is no deposition of Lyle Lima prior to his death and as his wife did not recall anything about the appointment in her deposition. Plaintiffs indicate Heather Lima "has intimate knowledge of the malpractice in that Plaintiffs believe her memory to be better than that of her mother." However, Plaintiffs did not file an affidavit or deposition excerpt following extension of discovery based upon their Rule 56(f) motion. When no pertinent evidence is presented to the trial court in resistance to a motion for summary judgment, it is presumed no such evidence exists. *Sadek v. Weber*, 2020 ND 194, ¶ 12, 948 N.W.2d 820.
> 3) Lyle Lima admitted he was distracted by looking at the Halvorson farm upon cresting the hill on the highway, in his vehicle, before hitting the wagon. Plaintiffs either do not have or failed to produce any other evidence to refute this claim.

The court granted summary judgment in favor of the Defendants because the court concluded no reasonable jury could find Dr. Bohn proximately caused Lyle Lima's injury, but the court did not grant summary judgment regarding the other defendant, Lyman Halvorson. The court then granted a request for entry of final judgment under N.D.R.Civ.P. 54(b) for the order granting summary judgment to the Defendants. Plaintiffs appeal.

## II

[¶6] Neither party argues the district court erred in ordering certification under N.D.R.Civ.P. 54(b). We "will not consider an appeal in a multi-claim or multi-party case which disposes of fewer than all claims against all parties

unless the trial court has first independently assessed the case and determined that a Rule 54(b) certification is appropriate." *Pifer v. McDermott*, 2012 ND 90, ¶ 9, 816 N.W.2d 88 (quoting *Union State Bank v. Woell*, 357 N.W.2d 234, 236 (N.D. 1984)). We are not bound by and may review sua sponte a court's Rule 54(b) certification under an abuse of discretion standard. *Capps v. Weflen*, 2013 ND 16, ¶ 6, 826 N.W.2d 605; *Hansen v. Scott*, 2002 ND 101, ¶ 7; 645 N.W.2d 223. "A district court abuses its discretion if it acts in an unreasonable, arbitrary, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned decision, or if it misinterprets or misapplies the law." *Id.*

[¶7] "Rule 54(b), N.D.R.Civ.P., preserves our long-standing policy against piecemeal appeals." *Id.* at ¶ 7. "A Rule 54(b) certification should not be routinely granted and is reserved for cases involving unusual circumstances where failure to allow an immediate appeal would create a demonstrated prejudice or hardship." *Energy Transfer LP v. North Dakota Private Investigative and Security Board*, 2022 ND 84, ¶ 8, 973 N.W.2d 404. When determining whether Rule 54(b) certification is appropriate, the court should consider the following factors:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Id.* (quoting *City of West Fargo v. McAllister*, 2021 ND 136, ¶ 8, 962 N.W.2d 591).

[¶8] We have explained "a Rule 54(b) certification may be appropriate if the certified judgment completely decides an entire claim." *Citizens State Bank-Midwest v. Symington*, 2010 ND 56, ¶ 10, 780 N.W.2d 676.

3

[¶9]   The district court found good cause for certification because:

> [A] delayed judgment would prejudice the parties by (1) risking the potential for inconsistent verdicts; (2) costs to the Plaintiffs would be increased for having the same witnesses and experts testify in both the Dakota Eye and Halvorson case if they are tried separately; (3) it is in the interest of all parties to have this case resolved quickly; and (4) the appeal will conserve judicial resources by ensuring all claims against all parties are heard in one trial.

"A proper exercise of the district court's discretion under Rule 54(b) requires more than mere recital of the language of the Rule, and ... the court should articulate in writing the reasons supporting its decision." *McAllister*, 2021 ND 136, ¶ 11.

[¶10] The factors in this case were properly considered. Absent unusual circumstances, Rule 54 (b) certification should not be granted to avoid multiple trials. *Greer v. Global Indus., Inc.*, 2018 ND 206, ¶ 18, 917 N.W.2d 1. Here, there is a risk for an inconsistent verdict between adjudicated and unadjudicated claims. Under N.D.C.C. § 32-03.2-02, a court may direct the jury to find special verdicts determining the amount of damages and percentage of fault each party contributed to the injury. If more than one party is found at fault, the liability of each party is several. N.D.C.C. § 32-03.2-02. Thus, a tortfeasor would be liable only for fault allocated to them.

[¶11] In *Hansen*, we held the district court did not abuse its discretion in granting Rule 54(b) certification after it dismissed defendants who did not have a duty. 2002 ND 101, ¶ 15. We explained:

> The Texas defendants therefore cannot be said to have "contributed to the injury" within the meaning of N.D.C.C. § 32-03.2-02 based upon the trial court's ruling on the issue of duty. Although Lawrence may be entitled to raise an "empty chair" defense against Brian Erickstad, in this posture Lawrence cannot raise an empty chair defense against the Texas defendants. Any evidence about the Texas defendants' potential liability would be irrelevant, and the trial court would not be required to instruct the jury to determine a percentage of fault attributable to the Texas

4

defendants. In this posture, no allocation of fault to the Texas defendants could occur, and a determination that Lawrence, or Lawrence and Brian Erickstad, were 100 percent at fault without a consideration of the potential fault of the Texas defendants would not render moot issues about the Texas defendants' potential fault. Under those circumstances, any personal jurisdiction issues stemming from resolution of the Texas defendants' duty will be present regardless of the outcome of the claims against Lawrence and will not be mooted or made advisory by future developments in the trial court. *See Symington [v. Walle Mut. Ins. Co.],* 1997 ND 93, ¶ 8, 563 N.W.2d 400.

*Id.* The district court found the Defendants here were not a proximate cause of Plaintiffs' injuries. "When we consider the merits in a case involving a N.D.R.Civ.P. 54(b) certification, we do so because the resolution of the issue on appeal will always need to be resolved and is separate from the issue left to be adjudicated." *Pifer*, 2012 ND 90, ¶ 19. The question before us is whether the Plaintiffs established a prima face case of proximate causation against the Defendants, but the question before the district court is what percentage of fault does Lyman Halvorson share for the Plaintiff's injuries. Whether the Plaintiffs successfully established proximate cause will always need to be resolved by an appeal and is separate from the issue left to be adjudicated. Further, the grant of summary judgment removes Defendant from the trial, so evidence about Defendant's potential liabilities would be irrelevant and the jury could not attribute a percentage of fault, and it is the jury's duty to determine fault. Should the case go to trial and Halvorson be found 100 percent at fault it would not moot this appeal of whether the Defendants' potential fault should have been considered by the jury at trial. Our review of the summary judgment would not be mooted or made advisory by further development in the district court.

[¶12] Because a jury should consider all parties that may be at fault when determining several liability, the Rule 54(b) certification here favors judicial economy, minimizes litigation expenses, and facilitates orderly disposition of the claims. *Energy Transfer LP,* 2022 ND 84, ¶ 11.

[¶13] The district court's analysis is sufficient to explain its reasoning process for granting Rule 54(b) certification, and we find certification is appropriate because the judgment decided all claims related to a party and the claims against the remaining defendant are contingent on the claims at issue on this appeal. The court did not abuse its discretion in granting Rule 54 (b) certification.

## III

[¶14] This Court's review of a grant of summary judgment is well-established:

> In deciding whether the district court appropriately granted summary judgment, we view the evidence in the light most favorable to the opposing party, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record. A party opposing a motion for summary judgment cannot simply rely on the pleadings or on unsupported conclusory allegations. Rather, a party opposing a summary judgment motion must present competent admissible evidence by affidavit or other comparable means that raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. When reasonable persons can reach only one conclusion from the evidence, a question of fact may become a matter of law for the court to decide. A district court's decision on summary judgment is a question of law that we review de novo on the record.

*Miller v. Nodak Ins. Co.*, 2023 ND 37, ¶ 12, 987 N.W.2d 369 (quoting *N. Star Mut. Ins. v. Ackerman*, 2020 ND 73, ¶ 6, 940 N.W.2d 857).

[¶15] "To establish a prima facie case of professional negligence, a plaintiff must produce expert evidence establishing the applicable standard of care, violation of that standard, and a causal relationship between the violation and the harm complained of." *Johnson v. Mid Dakota Clinic, P.C.*, 2015 ND 135, ¶ 11, 864 N.W.2d 269 (cleaned up).

[¶16] The dispositive question on appeal is whether the district court correctly concluded that no evidence produced created a prima facie case of a causal relationship between the violation and the harm complained of.

[¶17] The district court concluded no reasonable finder of fact would determine Dr. Bohn's medical advice caused Lima to collide with the Plaintiffs. It was an undisputed fact that Lima drove on a highway. The court determined there was no competent admissible evidence to contradict the chart notation reflecting Dr. Bohn's advice "not to drive at night and only minimally during the day, no highways."

[¶18] Plaintiffs argue the district court erred because a fact issue exists as to whether the instruction Dr. Bohn gave to Lima was confusing and a concurrent proximate cause of the collision.

[¶19] To establish a professional negligence claim, Plaintiffs must show a causal relationship between the violation and the Plaintiffs' injury.

> A proximate cause is a cause which, as a natural and continuous sequence, unbroken by any controlling intervening cause, produces the injury, and without which it would not have occurred. The term proximate cause contemplates an immediate cause which in natural and probable sequence produces the injury complained of and expressly excludes any assignment of legal liability based on speculative possibilities, or circumstances and conditions remotely connected with the events leading up to the injury.

*Davis v. Mercy Medical Center*, 2023 ND 153, ¶ 16, 994 N.W.2d 380 (cleaned up).

[¶20] "To warrant a finding that a person's conduct is the proximate cause of an injury, the injury must be the natural and probable result of the conduct and must have been foreseen or reasonably anticipated by that person as a probable result of the conduct." *Kimball v. Landeis*, 2002 ND 162, ¶ 7, 652 N.W.2d 330.

[¶21] "This Court has repeatedly cautioned that 'mere speculation is not enough to defeat a motion for summary judgment, and a scintilla of evidence is not sufficient to support a claim.'" *Barbie v. Minko Constr., Inc.*, 2009 ND 99, ¶ 6, 766 N.W.2d 458 (quoting *Heart River Partners v. Goetzfried*, 2005 ND 149, ¶ 8, 703 N.W.2d 330).

[¶22] Plaintiffs assert that Dr. Bohn's instruction caused confusion which allowed Lima to think he could drive on the highway. But Dr. Bohn's file notes state: "Pt ed not to drive at night and only minimally during the day, no highways." Dr. Bohn testified that she told Lima he could not use the highway to get to the farm. Jeraldine Lima testified she was at the appointment but did not remember anything. Sergeant Kennedy, a highway patrol officer, also stated that he thought Lima was instructed not to be on the highway. Lyle Lima died before depositions were taken.

[¶23] Plaintiffs also assert Lima was given confusing and inconsistent instructions from Dr. Bohn which foreseeably led to his choice to drive. Lima told a highway patrol officer that he felt he was safe to drive from his home to the farm; it is only speculation that he felt he could do that safely because of Dr. Bohn. Lima was not deposed and he is now deceased. Plaintiffs' expert witness, Dr. Alan King, wrote, "Dr. Bohn stated in her deposition that she told Mr. Lima no driving at all. That statement directly contradicts her chart. The general rule of practice for optometrists with regard to charting is if it is not charted it is deemed to have not been done or said." Following that standard, Dr. Bohn charted that she told Lima "no highways," and this accident occurred on a highway. It is clear from the chart alone that Lima was told not to drive on the highway.

[¶24] Giving Plaintiffs the benefit of favorable inferences from the record, only one conclusion from this evidence can be reached: Dr. Bohn told Lima not to drive on the highway. No competent admissible evidence raises an issue of fact, and we cannot assess the credibility of witnesses when reviewing an order granting summary judgment. *See Saltsmand v. Sharp*, 2011 ND 172, ¶ 18, 803 N.W.2d. 553.

[¶25] Because the court properly granted summary judgment in favor of Dr. Bohn, it was also properly granted in favor of Defendants Dakota Eye Institute, P.C., and Dakota Eye Institute, LLP. *See Greenwood v. Paracelsus Health Care Corp. of North Dakota Inc.*, 2001 ND 28, ¶ 22, 622 N.W.2d 195 (holding to recover against a hospital, plaintiff must establish negligence by an employee).

[¶26] We have considered the parties' remaining arguments and determined they are either without merit or unnecessary to our decision. The judgment is affirmed.

[¶27] Jon J. Jensen, C.J.
     Jerod E. Tufte
     Allan L. Schmalenberger, S.J.


**Crothers, Justice, dissenting.**

[¶28] I respectfully dissent from the Court's determination that the district court properly granted N.D.R.Civ.P. 54(b) certification. Because I would dismiss the appeal, I would not reach its merits.

[¶29] The district court certified under Rule 54(b) that its summary judgment order partially deciding this case was immediately appealable. I dissent from the majority opinion because the district court did not apply the correct legal test and the grounds relied on by the court to certify this appeal have been rejected in our prior cases. By affirming, and without overruling any of those cases, the majority threatens to upset more than 55 years of established law. *See, e.g., Berg v. Kremers*, 154 N.W.2d 911, 913 (N.D. 1967) (piecemeal appeal dismissed under N.D.R.Civ.P. 54(b)); *Pinks v. Kelsch*, 2024 ND 15, ¶ 13, 2 N.W.3d 704 (appeal dismissed for failure to comply with N.D.R.Civ.P. 54(b)). The resulting uncertainty that will be generated by this ruling will produce exactly what Rule 54(b) is intended to avoid—more piecemeal appeals caused by questionable Rule 54(b) certifications. *See Berg*, at 913 ("The rule discourages piecemeal disposal of multiple-claim litigation and permits appeals only from judgments determining all claims, except where the trial court for cogent reasons has expressly determined that there is no just reason for delay and expressly directs entry of judgment as to one or more but fewer than all the claims."). I believe this case also will repeat a pattern already experienced by this Court under this rule.

[¶30] After the 1967 *Berg* decision, this Court "noted a marked increase in the use of Rule 54(b) certifications, perhaps in response to a line of recent cases in which we have dismissed appeals for lack of proper certification." *Union State Bank v. Woell*, 357 N.W.2d 234, 236 (N.D. 1984). This quotation was accompanied by a footnote citing *Fee v. Richmond Mfg. Co.*, 346 N.W.2d 290 (N.D. 1984); *Martinson v. Raugutt*, 346 N.W.2d 289 (N.D. 1984); *Rippley v. Sande*, 344 N.W.2d 490 (N.D. 1984); *Anderson v. State*, 344 N.W.2d 489 (N.D. 1984); *Striegel v. Dakota Hills, Inc.*, 343 N.W.2d 785 (N.D. 1984); *Hennebry v. Hoy*, 343 N.W.2d 87 (N.D. 1983); *City of Minot v. Central Avenue News, Inc.*, 325 N.W.2d 243 (N.D. 1982). *Id.* at 236 n.3. Consequently, the Court in *Woell* emphasized "the burden is upon the proponent to establish prejudice or hardship which will result if certification is denied," and the district court must "weigh the competing equities involved and take into account judicial administrative interests in making its determination whether or not to certify under the Rule." *Id* at 237 (cleaned up).

[¶31] In *Woell* the Court stated the district court must explain why the matter at issue is the "infrequent harsh case" requiring certification, and must provide "more than mere recital of the language of the Rule" in making its order. *Woell*, 357 N.W.2d at 237; *Citizens State Bank-Midwest v. Symington*, 2010 ND 56, ¶ 7, 780 N.W.2d 676 ("Certification under Rule 54(b) "should not be routinely granted and is reserved for cases involving unusual circumstances where failure to allow an immediate appeal would create a demonstrated prejudice or hardship"). The Court in *Woell* also provided factors for a district court to consider when deciding a Rule 54(b) motion:

> In reviewing 54(b) certifications, other courts have considered the following factors, inter alia: (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and

solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

357 N.W.2d at 238. The district court here did not use or analyze the *Woell* factors, which alone is a basis to reverse as a misapplication of law.

[¶32] Instead of using the applicable legal test, the district court simply mentioned a few reasons under factor (5) and concluded:

> Based upon the Court's review of the record and pleadings, the Court finds good cause to grant the certification because a delayed judgment would prejudice the parties by (1) risking the potential for inconsistent verdicts; (2) costs to the Plaintiffs would be increased for having the same witnesses and experts testify in both the Dakota Eye and Halvorson case if they are tried separately; (3) it is in the interest of all parties to have this case resolved quickly; and (4) the appeal will conserve judicial resources by ensuring all claims against all parties are heard in one trial. There is no just reason for delay of the appeal against the Optometric Defendants. Accordingly, the Court GRANTS Plaintiffs' request for Rule 54(b) certification of their claims against the Optometric Defendants and certifies the Judgment dated March 14, 2023, for appeal along with any associated cost judgment.

[¶33] In concluding without analysis that Rule 54(b) certification was appropriate, the district court eschewed the warning in *Woell* that "[t]he benefit of such a reasoned statement is not merely that . . . it will aid us in discharging our duty to review the district court's exercise of discretion in issuing the certificate but that it will aid the district judge himself. A decisionmaker obliged to give reasons to support his decision may find they do not; 'the opinion will not write.'" 357 N.W.2d at 238 (cleaned up).

[¶34] Here, the district court's reasons for certification are present in virtually every case when all claims against all parties are not adjudicated. They also do not demonstrate why this is the "infrequent harsh case" requiring certification. Reviewed individually, the grounds also run contrary to North Dakota precedent.

11

[¶35] The district court first concluded Rule 54(b) certification was required because the parties otherwise risked inconsistent verdicts. The majority agrees. Majority opinion, ¶¶ 10-11. However, the risk of inconsistent verdicts nearly always is present when a party is dismissed on summary judgment and other parties remain for trial. This certainly is the situation with tort claims against multiple parties. Our decision in *Club Broadway, Inc. v. Broadway Park*, 443 N.W.2d 919, 920 (N.D. 1989), is instructive. There, the district court granted summary judgment to 2 of 10 defendants in an action where plaintiffs claimed "the defendants, 'acting in concert,' obtained the plaintiffs' property through fraud and deceit; converted the plaintiffs' membership list and accounts receivable; and wrongfully and intentionally interfered with the plaintiffs' contractual relationships with their club members." *Id.* The *Club Broadway* case contained all the concerns expressed in this case by the district court and the majority. Yet, in *Club Broadway* this Court concluded the court abused its discretion granting Rule 54(b) certification and dismissed the appeal. *Id.* at 922.

[¶36] The *Club Broadway* decision also highlights a consideration not accounted for by the district court or the majority. Instead of focusing on potential liability allocations at trial, this Court examined the impact on the appellate court and the appellate process:

> The defendants and their alleged conduct are so intertwined and interrelated that we will surely be required to review the same factual situation again if another appeal is brought after the district court renders its decision as to the remaining parties. Under these circumstances, not only is certification an uneconomical use of judicial resources, but "possibilities abound that the remaining defendants, by virtue of their lack of opportunity to participate, will be prejudiced by the decision on the certified appeal, and that the facts ultimately adduced at trial of the remaining defendants could undermine the soundness of the decision on the certified appeal." *Peterson v. Zerr, supra,* 443 N.W.2d at 298.

443 N.W.2d at 922. Here, like in *Club Broadway*, these same concerns are alive.

12

[¶37] The potential for inconsistent verdicts also is a lesser concern than circumstances in other cases where Rule 54(b) certification was rejected by this Court. In *Klagues v. Maint. Eng'g*, 2002 ND 59, ¶ 1, 643 N.W.2d 45, this Court dismissed an appeal due to improvidently granted Rule 54(b) certification of the denial of a defendant's motion for summary judgment on two dispositive claims in a class action. This Court said review of the dispositive issues should wait because the record did not establish extraordinary circumstances or demonstrate the unusual hardship that would occur in the absence of immediate review. *Id.* at ¶ 28. A similar result occurred in *Baker v. Autos, Inc.*, 2017 ND 229, ¶¶ 9, 12-13, 902 N.W.2d 508, where this Court concluded the Rule 54(b) certification was inappropriate and dismissed the appeal of the denial of a motion for summary judgment in a class action proceeding over usury and statutory violation claims.

[¶38] Second, the district court here concluded "costs to the Plaintiffs would be increased for having the same witnesses and experts testify in both the Dakota Eye and Halvorson case if they are tried separately." Again, the reasoning is flawed because it presumes reversal of summary judgment dismissing defendants Dakota Eye Institute and Briana Bohn. More importantly, "The trial court's attempt to prevent duplication of discovery and the possibility of a second trial is not alone sufficient reason to certify because these concerns are always present in an interlocutory appeal." *Club Broadway*, 443 N.W.2d at 922; *Peterson v. Zerr*, 443 N.W.2d 293 (N.D. 1989); *Vanover v. Kansas City Life Ins. Co.*, 535 N.W.2d 424, 427 (N.D. 1995); majority opinion, ¶ 10 (citing *Greer v. Global Indus., Inc.*, 2018 ND 206, ¶ 18, 917 N.W.2d 1, for the proposition "Rule 54(b) certification should not be granted to avoid multiple trials").

[¶39] Third, the district court here concluded "it is in the interest of all parties to have this case resolved quickly." Even without the benefit of citation, we know courts in every case should act in ways that quickly and efficiently resolve disputes. However, that interest does nothing to show the case at bar has the "out-of-the-ordinary circumstances or cognizable, unusual hardships to the litigants that will arise if resolution of the issues on this appeal is deferred." *Peterson*, 443 N.W.2d at 299.

[¶40] Fourth, the district court concluded "the appeal will conserve judicial resources by ensuring all claims against all parties are heard in one trial." This basis is directly contrary to established law. *Greer*, 2018 ND 206, ¶ 16 ("the desire to avoid multiple trials alone is not sufficient to grant Rule 54(b) certification"); *Club Broadway,* 443 N.W.2d at 922 ("The trial court's attempt to prevent duplication of discovery and the possibility of a second trial is not alone sufficient reason to certify because these concerns are always present in an interlocutory appeal."); *Vanover*, 535 N.W.2d at 427 ("Although economic considerations and delay are relevant to the Rule 54(b) equation, saving the parties and the trial court the time and expense of a second trial is not sufficient alone to justify a Rule 54(b) certification.") (cleaned up).

[¶41] In sum, the district court misapplied the law by failing to apply and make findings under our long-established precedent. Moreover, the reasons articulated by the court in support of its conclusions are legally inadequate. Therefore, I would dismiss the appeal.

[¶42] Daniel J. Crothers


**Bahr, Justice, dissenting.**

[¶43] I respectfully dissent from the majority's determination the district court properly granted N.D.R.Civ.P. 54(b) certification. I would dismiss the appeal.

[¶44] We review a district court's Rule 54(b) certification under the abuse of discretion standard. Majority, at ¶ 6. "A proper exercise of the district court's discretion under Rule 54(b) requires more than mere recital of the language of the Rule, and . . . the court should articulate in writing the reasons supporting its decision." *City of W. Fargo v. McAllister*, 2021 ND 136, ¶ 11, 962 N.W.2d 591. "Our review of a Rule 54(b) certification is to determine whether the case presents an 'infrequent harsh case' warranting the extraordinary remedy of an otherwise interlocutory appeal." *Sickler v. Kirkwood*, 1997 ND 40, ¶ 5, 560 N.W.2d 532. "The trial court must delineate unusual or compelling circumstances justifying Rule 54(b) certification." *Id.* at ¶ 7.

[¶45] Although this case might be appropriate for Rule 54(b) certification, the district court did not meaningfully analyze and articulate its findings regarding the relevant Rule 54(b) certification factors. *See generally*, Crothers, J., dissenting. Based on the limited reasons articulated by it, I would conclude the district court did not properly exercise its discretion when it granted Rule 54(b) certification.

[¶46] I would dismiss the appeal.

[¶47] Douglas A. Bahr

[¶48] The Honorable Allan L. Schmalenberger, Surrogate Judge, sitting in place of McEvers, J., disqualified.